Good morning, Your Honors, and may it please the Court. I'm Kathleen Sullivan, and I represent the appellants in Cross-Appley's Northern Pacific, for short. Your Honor, this is a dispute between two insurance companies over payment of defense costs for an insured who is not before you, an insured whose identification is not before you, just the defense costs. And – Ms. Sullivan, I just have a quick question off the bat. You're one of the preeminent appellate lawyers in the country, and yet here you are in Portland arguing over how much? $2.1 million plus interest, Your Honor, and it's my honor to be here. That's a chump change for both these companies. Are you looking to establish a principle of law not clearly established, or – Your Honor, we think the principles of law are clearly established and were violated in this case, and we think the case does have important precedential value. There are two As you know, Your Honor, you've seen them many times, these long-tail risk cases involving environmental or other hazards that take place and involve coverage by different insurers over a long period of time. They rise to a lot of disputes over coverage and contribution, and we think – These are primarily issues of state law in this case, are they not? They are, Your Honor, but the states – state law has an effect on companies nationwide, and one state sets a precedent for others. We think actually under the state law that is appropriate more generally – we think Oregon law fits into a pattern of law that was violated here by the judgment below. And let me start – there are two grounds on which we think you should reverse or vacate the entire $2.1 million judgment, and the first was the late notice problem, and the second was the problem of lack of proof of the lost policy. So if I could start, Your Honors, with the late notice problem. This was a case in which after the insured party, the gas station owners, tendered their notice of the Oregon Department's investigation to my opponent, the Fireman's Fund. That's in January of 1999. The Fireman's Fund didn't even bother to look in its files for other insurance, as was its obligation. It's plain obligation under Oregon law or under any state's law. It had an obligation to look for other insurance. It didn't do so for 27 months. It was not until March of 2001 that Fireman's Fund bothered to look in its files, see an application from the insured, the NEMI companies, that said our other insurer is Northern Pacific, for only a certain part of the time, not the whole time. Twenty-seven-month delay was crucial here, Your Honor, and we want to establish the principle that we want you to reverse, to reinforce the principle that a co-insurer has a duty to inform and notify a second insurer of their possible liability for contribution in a reasonable fashion. And, Ms. Sullivan, which case or cases in Oregon law, presumably, do you cite for that duty, as I believe you believe it is the case? Yes, Your Honor. Two cases, Your Honor. American Star is the case that provides under Oregon law a clear obligation to investigate files for other coverage. It's per se unreasonable to fail to do so. Fireman's Fund failed to do so here. And second, Your Honor, the Hartford case is the case that suggests that a co-insurer has a duty to notify other insurers. And, Your Honor, I'd refer you also by analogy to New York law, and I take Your Honor's point that where Oregon law goes has an impact on other states. A very important case under New York law is United States against blank – I'm sorry, blank, the blank case. That's a case which Judge Oaks decided on the Second Circuit under New York law, saying quite precisely under New York law that a co-insurer has a duty to notify other insurers. Now, Your Honor, the difference – Ms. Sullivan, may I interject? To everyone, I apologize for having to do this by video. It's so much better to do it in person. But I had no choice in this matter. But just to get the parameters of your claim, you're asserting late notice as to only two of the six sites. Is that right? Your Honor, there was late notice as to two of the six sites. But the prejudice affects all six sites, because what happens during the late notice period is that the insured NIMI destroys all its records. It destroys all its own records. So in the crucial period between that January of 1999, when the tender goes to Fireman's Fund, and March of 2001, when Fireman's Fund finally notifies NIMI, and then in April 2001, when NIMI finally notifies North Pacific, during that time, the records were destroyed that could have established coverage. Remember, my client's chief defense is we never – we don't have any policies here. We don't know that we insure Mr. NIMI for anything other than six years. And we have no proof that we insured any of these other parties that are part of the NIMI gang. Let me be sure, then, that I – we get this sequence. Per Judge Wardlaw's question, you've agreed that – but really only with respect to two of the sites that the notice was actually untimely. But by failing to notify your client with respect to the two sites, the documents, the policies, if you will, were mislaid or destroyed or whatever, which made it impossible for you to provide a defense, if you will, for all sites, including the four that were timely. Is that correct? That's exactly correct, Judge Smith. And that's the more succinct answer to Judge Wardlaw's question. And is there any case law in Oregon, or for that matter, New York, or other states that would take that one extra step? I get your point about American Star and what you talked about in terms of the blank case. But is there a case law that goes beyond that? It's basically – it's almost a proximate causation issue on maybe an insurance form of Hadley v. Baxendale or something. Your Honor, if there were any – we believe that there's prejudice, per se, in this case, because the very issue is were we on the risk during the time period. If there are no policies that show we were, and no chance for us to find all the other policies that might have been in Neamey's destroyed records that could have shown that somebody else was, we're really out of luck. What essentially this $2.1 million is 75 percent of the defense costs where nobody ever showed a policy. Nobody ever showed a policy saying that we insured anyone. There's just two bits of documentary evidence that suggest circumstantial evidence that we issued a policy for six years out of the 15 alleged. So it's not – Is there an obligation on the part of the insurance company to maintain its own records with respect to this? There is not, Your Honor. So there is certainly an obligation on us to diligently search for records that exist, but not to maintain. So just so I understand correctly, let's assume that your client had all of the – you know, all of the additional insured and everything – all the notices and everything required initially, and say that it had a regular purging process and it destroyed all of the files, and an insured comes forward and says, you insured me, but I don't have any records. What happens then? Well, Your Honor, you look to circumstantial evidence. And here that evidence – and if I could turn to the second reason why you should reverse – the evidence here was in the district court's own words, thin. There are only two documents in the entire record that suggest that Northern Pacific ever insured anybody among the NIMI companies. And that's one certificate of insurance issued to Mobil that said we insured them for – we insured NIMI for three years. And another is NIMI's own application to Fireman's Fund that says Northern Pacific insured them for another three years. That's six years out of 15 for which we've been held liable. And that evidence was thin. There was a contest of evidence over whether there was some other reason to think, well, maybe it was the normal practice of Northern Pacific to add other family members to the existing coverage. We put in countervailing evidence saying that there was other coverage. And that leads to my second point of law, Your Honor, which is we believe the second error that requires reversal or vacator of the whole judgment is the inappropriate application of a preponderance of the evidence standard rather than a clear and convincing evidence standard. Ms. Sullivan, I'm sorry. Before you go on to the number two, there's an odd procedural posture to the district court's rulings. I understand that you must show unreasonable delay and prejudice. And I – what the district court seemed to do was on summary judgment decide that the delay was reasonable and then brought prejudice to later. But if you decided the delay was reasonable, then the claim is over, right? That's right, Your Honor. Judge Wardlaw, we believe that it was an error of law at ER 86 for the judge to hold that this was a reasonable delay. The judge says this was not an unreasonable delay. We think per se as a matter of law, 27 months is an unreasonable delay. And that was error and that requires reversal. And the odd procedural posture that Fireman's Fund has alleged should not concern you. They raise Ortiz as a red herring. Ortiz simply said you can't appeal a denial of a summary judgment after a bench trial if what you're arguing about is the facts. But it does not say that you can't appeal a denial of a summary judgment after a bench trial if you're arguing an error of law. That's this Court's decision in Banuelos. Banuelos was good law before Ortiz. Ortiz expressly reserved the Banuelos question. Justice Ginsburg expressly reserved the question of appeals post-bench trial of denials of summary judgment on a purely legal question. Unreasonable delay is a purely legal question, Your Honor, because there's no dispute about the length of the delay. It's a purely legal question. Well, the way – as a practical matter, the way in effect what the district court did was grant summary judgment to Fireman's Fund on that. That's exactly right, Your Honor. In effect, we're appealing that grant. And that was erroneous as a matter of law. And we think that the late notice principle that was violated in this case requires reversal. By the way, Your Honor, Judge Wardlaw, we were never allowed to put prejudice in controversy later in the case because the judge granted a motion in limine barring us from introducing our evidence of prejudice. We think the undisputed evidence of prejudice entitles you to say we were prejudiced as a matter of law and simply reverse outright. If there's any doubt about that, send us back for a new trial on prejudice. By the way, Your Honor, even if you don't agree with me that we wipe out all of the liability based on late notice, at a minimum, at a minimum, you must reverse on the nearly $100,000 of pre-notice costs. There were pre-notice costs that we were assessed for. That was the very thing I was going to ask you about, whether or not you have waived your argument about that prior to receiving the notice. We didn't waive it, Your Honor, at all. We argued that we were, that pre-notice costs were barred. Remember how that's done below the district court relies on California law because there's no Oregon law directly on point. Everybody agrees that's what's what's going on. What about Cisneros, though? Cisneros is, remind me, Your Honor. Okay, so Cisneros, this is one of our cases, and a little quote here, plaintiff did not fully develop the argument that it now raises on appeal. Accordingly, we declined to review this claim. My point is simply that I'm wondering whether this point was raised below or sufficiently argued here that we should be considering this issue of the costs that were incurred prior to receiving notice. Your Honor, it was not only raised below, it was decided below. If you look at ER 8788, the district court expressly relied on this court's decision in Northern Insurance and said under Northern Insurance, Oregon law does not allow, does allow, excuse me, pre-notice costs to be paid. With respect, Ms. Sullivan, that was with respect to pre-tender defense costs, not pre-notice costs. Yes, Your Honor, I'm glad you raised that. I am, too. There's no difference. That is the biggest red herring in the case. There's no difference in this case between tender and notice. Tender and notice were the same here because how did we get notice? NIMI, the insured, sent us a letter in April of 2001, and that's when we got notice and tender all at once. So in this case, tender and notice are identical, and there's no material difference between our arguments. We also relied below on cases using notice as the operative term. And, Your Honor, One Beacon and Truck v. Uniguard plainly established that pre-notice costs can't be imposed on us. We don't have a duty to contribute unless we have a duty to defend. We don't have a duty to defend unless we have had notice. So, Your Honor, under undisputed law, this was an error. Under undisputed law that we are using here to interpret Oregon law, this was an error, and we didn't waive it below. Your Honor, our briefs, our yellow brief in particular, amply cites all the places we preserved that claim. Do you think I ought to draw a little fish here on that, right? A little fish with a red pen, Your Honor. A red pen, right. Your Honor, if I could just turn back to what I started to talk about before on the second issue that wipes out the whole judgment, it's that this was a case in which clear and convincing evidence should have been the standard for assessing whether we were liable at all where the policies had been lost. Now, Your Honor, let me first clear the ground by saying that the Can I just ask you, before you go on too far on this, if I understand correctly that Oregon Revised Statute 465.4796 supports the concept of a preponderance of the evidence standard. That's the standard default in civil cases, and it's the majority rule in most insurance cases, at least according to the Sixth Circuit in Lincoln. What contrary position can you show that should turn the tables on this? Before I answer, Judge Pagerson, I need to make sure to reserve time for responding to the cross appeal. And I'm running low. Will I be able to have adequate time  First of all, Oregon Statute 465.479 does not apply. By its own terms, it applies to the relationship between the insured party and the insurer. Every term in the plain text of 465.479 is about a preponderance standard for lost policies for insured parties. But aren't the insurance companies, I may have used the wrong term on this, sub-regees, if you will, in that situation? They are not, Your Honor. And that's an important difference. Let's distinguish two worlds. In one world, sometimes an insurance company is a sub-regee standing in the shoes of the insured under the insured's contract. We're not in that world. We're in a very different world, the equitable world of contribution among insurers, where the insurer is not standing in the shoes of the insured. The insurer in these all-sums cases where you're trying to spread the risk over different policy years are just fighting over relative, proportional, equitable responsibility. That is not a contract line of cases. And so all of the contract line of cases that Fireman's Fund submits to you, the judgment creditor cases and the sub-regee cases, are irrelevant. What is relevant, we think, are cases in which so, Your Honor, you have a free hand here to interpret Oregon law. The statute does not preclude an interpretation of Oregon common law to hold that when there's a lost insurance policy in an inter-say insurance company contribution case, there ought to be clear and convincing evidence. We cited, to Your Honor, four key cases from Oregon. Oregon, and by the way, Your Honor, you referred to the default statute, which is Oregon Statute 10.095 sub 1. That's the jury instruction default. And I would just remind Your Honor, it says... But prefaced by the term on proper occasions. So on proper occasions. So on proper occasions. And the common law in Oregon plainly says there are sometimes not proper occasions for preponderance. And four of them we cited to you in the brief. Willibanks, Barkas, Mathis, and Weatherford. Willibanks is, if there's a divisive property in a testamentary instrument, show us clear and convincing evidence. We don't want people making up that, you know, the deceased gave them the land. Barkas, oral contract to devise real property, same concern. Mathis, an oral modification of a written contract. And Weatherford, of course, Reformation, where it's common to have a clear and convincing evidence standard. We would suggest that Oregon provides in those cases, if you're going to say you need clear and convincing evidence to modify a written contract, how could you not require clear and convincing evidence from a sophisticated insurer to show that there was a policy even in existence at all? The same concerns of untrustworthy memory, disappeared evidence, witnesses being deceased or memories fading apply here. And Your Honor, the reason why that 465.479 protects the insured with a preponderance standard, let's think about the policy. We're inside the Oregon Environmental Cleanup Assistance Act. We want the insured, the gas station owner, to be on the hook, clean up the site, and be good for the people of Oregon. So you're, as I get your point, you're saying these two sophisticated parties, you really need this higher standard. And not like in Bernard, you've got other oral contracts can be proved by a preponderance. Why would that standard not apply more than it would in a situation where you, let's say it better, sophisticated parties, I would think you have less of a concern that somebody's going to be defrauded. You've got, you know, big players on either side. They have good counsel and they can take care of themselves. Fair enough, Your Honor. And we can't claim and don't claim that Oregon law on oral contracts goes our way. But Your Honor, what we're asking for here, and to go back to your first question, why are we here trying to establish important policies in these long-tail cases? We think especially in long-tail environmental cleanup cases where there's multiple insurers on the Here Fireman's Fund, the first insurer to get hit, has the right incentives. Their incentives should be to pay the insured right away, use a preponderance if the policy is lost so that the gas station owner gets his insurance coverage and cleans up the site. Because that's the insured. That's the insured. But in this case, two big players, you say you need a higher standard? Absolutely. Because the incentive, once the targeted insurer has a legal obligation to pay all sums to the insured, then that the first insurer has a moral hazard, if you will. He has an incentive to try to foist that liability onto any other insurer he can find. So you find one piece of paper that says 1967 to 1970, and you find another piece of paper that says 1978 to 82, and you say, well, magically, there must have been coverage in 1970 to 1979 because you want to foist the risk off. That's a bad incentive. You agree that were we to adopt your position, we would be, in effect, by common law methods, providing a new standard for dealings between insurance companies? In Oregon, yes, Your Honor, but the only two precedents directly on point from other jurisdictions go our way. If I could just cite, Your Honor, Maryland Casualty. Maryland Casualty is a contract to insurers in a contribution case. It applies clear and convincing evidence under Washington law. Could you jump to the side on that, please? Yes, sir. If not, you can send a 28-J letter and give it to us then. I'm happy to give it to you right now, Your Honor. Or just jot it down. Maryland. I'm sorry, Judge Wardlaw? I said you could just write it down afterwards and hand it to the court. It's 1995 Westlaw 562179. 1995 Westlaw 562179, Southern District, 1995. And the second one, Your Honor, is the Transamerica case. This is under Missouri law, in which the court assumes, without deciding under Missouri law, that clear and convincing applies in an interse interinsurer case. That's 908 Southwest 2nd 173, 1995. Your Honor, what I point out most I'm sorry, let me just. So we have a loss of policy. We have one certificate of insurance for the mobile oil, and we have this fireman's fund application that says, I guess, prior insurer North, what's your client's name? I'm sorry, what's it say? Oregon Auto. Oregon Auto. Okay. So how are the policy limits proved up? And how is the scope of coverage proved up, if that's all you have? Your Honor, that's a great point. In this case, it would be impossible to prove it up if we were in indemnity world. If we were looking at indemnity, we would not be able to put to prove policy coverage, policy limits, exclusions, because there are no policies in the case. But remember, this case arises under paragraph 22 of the complaint only on defense costs. Here, all that we're fighting over is defense costs, not indemnity costs. But the policy point you raise, Your Honor, would be equally applicable if we were arguing over indemnity. Why should one insurer be able to make up 15 years of liability based on two documents that aren't a policy, string together set nine years, 1970 to 1979, where there isn't even circumstantial evidence, and no evidence at all that anyone other than Ed Nemi Oil, any of the other parties, were covered? So your point, Your Honor, is really why we're here. We're here to say that clear and convincing evidence for lost policies should apply in the inter-insurer contribution context, whether we're in defense world or indemnity world. And it would be even a more of an acute problem if we were in indemnity world. Your Honor, we'll rest on the brief for the defense costs argument. We argue that there's four categories of indemnity or other nondefense costs that were improperly included in the defense costs case. They're covered in the brief amply, feasibility studies, post-remedial investigation costs, an attempt to shift liability to other responsible parties, and the cost of this litigation. At a minimum, if you do nothing else, we respectfully request that you send it back to the district court to shave off the defense costs and the pre-notice costs. And thank you for giving me time to respond to the questions. I gather that you and perhaps your colleague on the other side are wanting an opinion on this because you're trying to establish policy. Is that right? Justice Sotomayor would disagree with that, of course. Your Honor, respectfully, we think the policy is already set forth very clearly on late notice. And we think the policy is implicit in Oregon law for the insurance context. And Fireman's Fund has failed to point to a single case in which preponderance has been applied to a lost policy in an inter-insurer case. So we don't think there's any law against us. We think we're trying to affirm. But you're asking, I gather, that if we decide your way, you'd like there to be a law based on a published opinion, right? Well, Your Honor, we believe reversal or vacater are required, whether by published or unpublished opinion. You'd take it anyway? We will, Your Honor. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, Lynn Murray representing the appellee Fireman's Fund Insurance Company. First, Your Honor, I'd like to say that Fireman's Fund is here to get money, not to set any policy. Fireman's Fund has fought this case for seven years. It is, by the judgment of the district court, a 25 percent insurer. It has paid 100 percent of the costs. It has paid attorneys' fees through a long, hard thought battle, and I'm sure that comes Excuse me, counsel. My understanding is that Fireman's Fund has sought contribution from a number of other insurance companies with whom you've settled, and they've paid. So you're not still on the hook for 100 percent? Your Honor, there was one insurance company that had a very short period of time. I think it might have been a matter of weeks, and we've settled with that insurance company. So you're correct, Your Honor. I don't know the exact percentage, but it's fairly close to 100 percent of the defense costs. So how did you, what evidence did you submit that, I'm just confused, that North Pacific insured these various meanie entities for 15 years? Let me address that, Your Honor. The evidence was bookended by two documents. The first was a certificate of insurance from the 1967 to 70 time period, which had within it, to Your Honor's earlier question, limits. And it specifically were those limits that the district court relied upon in setting limits for the policy. At the other end of the equation was a reference in the application to an additional three-year policy from 1979 to 1982. How do you know that that was an additional three-year policy? There was a reference to a North Pacific policy with a North Pacific policy number, which was admitted to be a North Pacific policy during discovery. But how do you know it was for three years? Because it said in the application 79 to 82, Your Honor. All right. And within that time period, there was an additional document within that time period produced by North Pacific, which listed policy numbers, which allowed us to identify additional policy numbers. Then what we also had was a situation where the broker testified, NEMI, the insurer testified, and our expert testified that the typical practice during this time period would have been to issue a continuous set of three-year policies throughout that time period to the entire group. Ms. Codd, who was the NEMI general manager at the time, testified that these were always the same blanket policy. So we had not only the documentary evidence, which exists, and sometimes in these lost policy cases the documentary evidence is fragmentary, but we had a certificate, we had references in the ongoing file, but we had testimony from all sources and no contrary testimony. The only contrary element out there was in 1967, there was a single document suggesting that there might have been some different kind of policy, different than the certificate, and at trial we proved up that that different kind of policy didn't apply to these issues. So the evidence was as substantial as you're going to get in these lost policy cases, Your Honor, when things go back. And I'll note that North Pacific destroyed its records in 1992. We're not complaining about that? I'm going to say, I'd like to follow up on that. As you heard, North Pacific takes the position that even though the notice was, in quotes, timely with respect to four of the six sites, nonetheless that by failure to give notice with respect to the two earlier sites and so on, that the insurer destroyed most of the documentation that was necessary for North Pacific to properly frame its defenses or know indeed whether it had any liability at all. What's your position with respect to that? And I particularly would be interested if you have any case law that would refute what North Pacific alleged. Your Honor, let me address that and then when we get to late notice, I'd like to back up at some point and address the procedural aspect of it. But let me go straight to the merits on prejudice. On the merits on prejudice, what we have in the record and the evidence that North Pacific has relied on to show prejudice is a series of documents introduced at trial and not at summary judgment that relate to what happened during the relevant time period, DEQ, cost recovery reports and things of that nature. There is also a citation to the testimony of Ms. Codd, who was the general manager I talked about earlier. And Ms. Codd testified that in the time period between 1996, 1997, 1998, records were destroyed when they closed up a shop. Now, 1998 is long prior to the time when Fireman's Fund got, maybe not long prior, but prior to the time when Fireman's Fund received any notice here. So the testimony is that certain unidentified records, not related specifically to insurance, unidentified records were destroyed during that time period. Now, is this evidence of prejudice, Your Honor? The district court found that there was a disputed issue of fact on the issue of prejudice and it decided that there was a disputed issue of fact for trial. Ms. Sullivan referred to a request for a new trial and a remand for a new trial. The papers and the briefs do not ask for a new trial on this issue of prejudice. They ask the court to decide as a matter of law that there is prejudice here. Let me be sure I understand that. That was different than my recollection. But you're saying that North Pacific asked the judge to decide the prejudice issue as a matter of law and that the trial judge did so. Is that correct? No, Your Honor. North Pacific asked for summary judgment on, among other things, the question of prejudice and the trial judge held that there was a disputed issue of fact as to prejudice and that it was premature to rule on that basis. And that's at ER 87. Okay. So in that circumstance then, were we to send any portion of this back, that aspect would need to be tried to determine whether or not there was prejudice, correct? It would need to be tried, Your Honor, but that is not the request that was made in the appellate briefs. If I may, I have a related question to that. The district court found that Nene's delay was unreasonable, but where did it address the reasonableness or not of the delay in notice to North Pacific? Your Honor, that is exactly one of the points that I wanted to raise as it related to the procedural aspects of this case. The district court, and understand that the procedural posture in which Nene, the gas station owner, was still in the case, and the other insurance company, Federated, the one that insured for a few weeks, was still in the case. The motion that was made was a pre-notice motion. And what the motion relied on was the idea that Nene had acted unreasonably in delaying notice to North Pacific, and it also raised the question of the prejudice issue. What the judge actually ruled, and very specifically at ER 86, the judge ruled that I find that he was looking at the question of whether the insured's conduct, whether the insured acted unreasonably, and what he found was he found no real dispute as to that particular issue. So what the judge said, and in the context of denying a summary judgment, what the judge said was, I find that Nene, not Fireman's Fund, did not act unreasonably. So you did the judge, per your recollection, the judge found that Nene did act unreasonably or, and was no finding with respect to Fireman's Fund? Correct. Found that Nene did act reasonably, Your Honor. Oh, he acted reasonably. Did act reasonably. And no finding as to Fireman's Fund. Which goes into the procedural issues in this case. And if I might briefly step back and look at those procedural issues from a late notice perspective. First, it is our position that Ortiz v. Jordan is an absolute bar to this, to this, to both the late notice and the pretender issue. Ortiz asked the question, may a party appeal an order denying summary judgment after full trial on the merits and said at page 888, 889, our answer is no. The basis for that was that it said that an interlocutory appeal was not final and therefore not appealable. It then went on to address qualified immunity and it found that in certain circumstances qualified immunity gave an immediate right to appeal and therefore qualified immunity might be different than what it deemed the ordinary case. It then went on to address Rule 50 issues, not at issue here. But those second two segments of the opinion, the qualified immunity discussion and the Rule 50 discussion, don't detract or modify the first aspect of the opinion, was that interlocutory appeals according to Supreme Court authority are not final unless they fall within some exception that renders them a final judgment. Now I'd like to go to your question, Judge Wardlaw, about whether or not this really was a grant of summary judgment. And the issue there according to what we have here is an oral transcript. And in the oral transcript, in the course of denying summary judgment, what the judge said was, I find there's no real dispute as to Nene's reasonableness here. He then went on and said, but I do find there's a dispute as to prejudice and I therefore deny the motion. The judge in the court order reflecting that ruling denied the motion for summary judgment on late notice. But most important in the 49 and 100, three separate times the judge said, to the extent that I've denied your summary judgment, North Pacific, you have leave to renew them or you have leave to try those issues. So you're arguing that they can't? Right. They were never tried though. Late notice was never tried. They were never tried, Your Honor, and that was North Pacific's choice. Now we would argue that late notice was never tried because North Pacific knew. But didn't, excuse me, didn't Berman Spen file a motion in Lemney to exclude any evidence regarding late notice? We did not, Your Honor. My colleague and I have been talking about that over the last day trying to figure out why we didn't do that. We think that we didn't do that because we thought having a trial on any issue would be far less likely to have us see you multiple times than if we had certain summary judgment rulings. So where does that leave us then in light of Ortiz? I gather you feel in effect there's really nothing to appeal because it was a denial of a summary judgment, and yet Ortiz seems to treat it as if it were a grant of a summary judgment. So where do we stand with all this? Well, Your Honor, I don't know that I'd agree that Ortiz would treat this as a grant of summary judgment. I think they would say it's an interlocutory order and therefore not appealable. So our argument is half of this appeal goes away, the late notice and the pretender arguments. However, I'd like to make some alternative arguments if I could. But is the conclusion of unreasonableness a legal question, not a factual question? Your Honor, reasonableness or unreasonableness is an inherent factual question. It's a mixed question. It is a mixed question, in fact. Perhaps a mixed question of law. But if I could read from Ortiz, to the extent that you believe that a pure legal error survives the Ortiz case, what Ortiz says it's talking about in that context is cases fitting that bill typically involve contests not about what occurred or why an action was taken or admitted, but disputes about the substance and clarity of preexisting law. If you end up with a situation where any issue that someone argues is a matter of undisputed fact falls within an exception to Ortiz, you've really swallowed up the rule. The problem is the Supreme Court says summary judgment must be denied when the court of first instance determines a genuine dispute as a mere material fact precludes the entry of judgment. And here, as to North Pacific, the district court did not make that finding. I'm sorry, what were you reading from? I'm reading from Ortiz. From Ortiz. And here the district court made a finding that it found no evidence of unreasonableness of Nene's conduct. And I'm not sure I'm tracking with Your Honor's question. Well, the issue is whether or not Fireman's Fund gave late notice to Pacific. Right, Your Honor. And that is the issue here. That's the issue that's being argued by North Pacific, whether or not Fireman's Fund provided reasonable or unreasonable notice. And we have other issues when we turn to the merits and the cases and whether or not we had an obligation to do that. But just assuming for purposes of argument that we did have an obligation. Well, if you want them to contribute, don't you think you should give them notice of that so they can participate in the investigation and remediation and all the other things that are involved in environmental cleanup? Your Honor, as a practical matter, absolutely right. Whether or not we had a legal obligation to do that is a question that I'll get to right after I ask what I think is your procedural question, which is, was there actually a ruling here that Fireman's Fund behaved reasonably? We think Fireman's Fund did behave reasonably, but there was no ruling that Fireman's Fund behaved reasonably. So where does that leave us then? That leaves you. First, we have the absolute bar issue with Ortiz. Then we have the question of whether or not a purely legal exception applies. Should you find that a purely legal exception applies? And should you find that reasonableness is that kind of a purely legal exception? Well, not so much that it's an exception, but that Ortiz didn't go that far and rule on that. Because if you read it narrowly, it was a factual question. I think that's right, Your Honor. If you read it narrowly, reasonableness is a factual question. But if you go on and you assume that reasonableness is the type of question that a court would address after Ortiz, then you have the problem that you don't actually have a finding of Fireman's Fund's reasonableness here. So you don't actually have the finding that's being appealed at this case, which is a very narrow question. Isn't it the entity that's – whether it's the judge or the jury that's best able to make that determination? It might be, Your Honor. And the issue here was we had a denial of summary judgment. We had a court that said multiple times, raise it at trial. And it wasn't raised at trial. Well, North Pacific got argued that –          I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. I don't know.          I don't know. I don't know. And I think the question is, whether in a particular situation, when you're appealing with reasonableness, whether the jury was more confident to rule on that issue than the court. I think so, Your Honor. Jurors make those decisions all the time. I think so, Your Honor. And I think that They do have the right of cases. And North Pacific did raise the issue of the reasonableness of Fireman's Fund's notice in this, before the district court, did it not? What it did, Your Honor, was it said the issue is Neamey's reasonableness and prejudice. Fireman's Fund's failure, in their view, to provide notice over this 25 or 27-month period is an exacerbating factor for the prejudice. That's what it said. But did the district court, if I understood you correctly, you said the district court didn't really rule on that second point. Is that correct? It did not. Okay. So if it didn't rule on that second point, if we feel that Ortiz has, you know, covered it, then that's one thing. But if it's not covered there, then wouldn't the proper thing be to send this back to the district court to make a determination about the reasonableness of Fireman's Fund's failure to give notice during the 27-month period and not Neamey's? Your Honor, that has to assume that there was a grant of summary judgment here. Because if there's a denial of summary judgment, what's being requested here is that this court decide the issue as a matter of law. That's what's being requested. And we think the district court made it very clear, both orally and in its ruling, that there was no grant of summary judgment. But in effect, in effect, though, I guess that's the argument, in effect, didn't the district court grant summary judgment to Fireman's Fund by the way it was handled here? It did not, Your Honor. It made a comment in an oral statement that it didn't find a dispute on a particular issue relating to Neamey's reasonableness. Do you want us to decide whether that delay as a matter of law was reasonable or unreasonable? Your Honor, we actually want you to decide that it wasn't raised below and that the issue of Fireman's Fund's reasonableness was never ruled on below and is not properly before this court. But we do think that both the issues of reasonableness and prejudice are inherently factual. Couldn't we send that back to the district court? Your Honor, this was a denial of summary judgment. And if I could say, we have been through a lot in this case, and we have been through a trial. And the issue was open for North Pacific, a sophisticated party, to raise this issue at trial and to have it tried. It chose not to do that. And the fair thing to do, given that it chose not to do that, is not to have us go back and retry the case. I thought they did raise the issue. Of Fireman's Fund's reasonableness? Uh-huh. I'm looking at SCR 387, 389, and 391. Your Honor, the basis for their ruling, the basis for the argument was that Neamey's conduct was unreasonable. Okay. I'm sorry. They did not raise the issue at trial. Is that Your Honor's question? Was it before the district court in a non-trial situation did they raise it there? Before the district court in the summary judgment briefing, they cited the Fireman's Fund as an exacerbating factor for prejudice, and the court explicitly did not rule on that. Okay. So there's no ruling. So what you want us to do is to say that because of Ortiz, based upon the strategic decisions of North Pacific, that they just basically walked away from this issue. It's all over. There's nothing on which we can rule. They did, Your Honor. They had a chance. We had a trial. We had two trials set. We finally did get to trial. They had a chance to raise all issues. Now it's time for the liability aspect of this to be over, which if I might take 20 seconds then to address the attorney's fees. I'm afraid that's all I have. What took so long for the Fireman's Fund to notify the other side? Your Honor, we have an affidavit, and the affidavit said that there was an investigation done and they didn't find it for some period of time. Now realize there wasn't much going on at the sites during that time period. There was very little happening at that time period at the sites. When we were briefing the summary judgment motion, because the issue was Nene's reasonableness and because the issue was prejudice, frankly, we didn't load the record at that point with the evidence of what Fireman's Fund had done in the search. One of the things that Fireman's Fund would be thinking about is, is there other coverage? Have you thought about that? We're told that the insurer destroyed its records. Did that include its ledgers and its check stubs and the banks that it did business with and all that? There's absolutely no evidence, Your Honor. There's some evidence in the record that says it was a debris-filled room and that the debris-filled room was cleaned out. That's some of the evidence. That's the issue that the court said was not ripe for decision here. Well, you knew where they banked. I'm sorry? You knew where they banked the insurer. I don't know if that's in the record, but certainly that should be knowable, Your Honor. It should be knowable. Yes. And you could check the bank. Bank keeps the records. Typically a bank would not keep the insurance policies. No, not the insurance. No, but it would keep evidence of payment of the premiums. Oh, Your Honor, going back to the 1960s and the 1970s, I don't think so. I can tell the court that we did scour the record for evidence at that point, and frankly, given what North Pacific did when it got notice, what North Pacific did when it got notice was nothing. It waited five months before it even responded, and then when it responded, it said, we haven't made a determination yet, and then it never asked to see the sites, any of those issues. An interesting and simple case, right? It is not simple, Your Honor, and it's taken a long time, and if I could make just one point relating to the attorney's fees on that. Think of how much it's added to the gross national product. It's been frustrating, Your Honor. It's been very frustrating for our client, but you're correct. We've been here once already, and we're back again. On the attorney's fees, the court has a decision to make. Our position on the attorney's fees is that there is Oregon law interpreting the words plaintiff in the statute, and that consistently over the past 30 years, there's been an unbroken line of expanding the definition of the word plaintiff on attorney's fees, and the certain underwriter's case is the first case and the only case cited by North Pacific that attempts to restrict that statute, in this case to a specific group of claimants and carving out a specific type of litigants. But it doesn't go so far as to cover attorney fee work on feasibility studies, does it? Your Honor, that's the defense cost issue, and in the DEQ there's a reference that says feasibility studies, and there's a rebuttable presumption that there's no coverage for that. I will tell you the evidence is that all six sites, none of them had feasibility studies, not one. I'm talking, Your Honor, about the attorney's fees that we're requesting. I'm just looking here. At ER 26, paragraph 24, it says the challenge fees involved in, quote, work related to development or evaluation of remedial action options. Isn't that a feasibility study? There's a definition in the statute that includes that within feasibility study, Your Honor. When assessing whether or not those are defense costs, there's a rebuttable presumption that those are defense costs. That was rebutted here by evidence of, among other things, the fact that there were no feasibility studies at these sites. And with that, are there any additional questions? Well, I'm wondering whether we should consider certifying to the Oregon Supreme Court the question of the standard, the evidentiary standard for loss policies in this context. Your Honor, if I could address the loss policy issue, Oregon is a state that has consistently identified preponderance, more so than other states, as the appropriate standard, and in a variety of ways which are explained in our brief. When we get to the oral contracts, oral contracts and written contracts are very different in terms of the forms and those issues. Turning just first to the practical aspects of this, or last to the practical aspects of this, if you end up with two different standards, you end up with perhaps an insurer in the same case applying two different standards. The two different standards would apply to judgment creditors as well, so you would end up with a different standard and a higher standard for judgment creditors or people in that position. But that's not that unusual for courts to provide one standard for, in quotes, consumers, ordinary members of the public, and sophisticated merchants. Isn't that correct? I'm not sure. Take the Uniform Commercial Code, for example. I mean, you've got a whole different rule of law with respect to merchants as opposed to ordinary customers. That may be true outside of the insurance context, Your Honor. There is no state in the country that applies a different rule to loss policies for insured disputes and insurance companies. Ms. Sullivan cited, I think it was a Missouri case and a New York case to the contrary. Do you dispute those cases? The Missouri case expressly did not decide the issue, Your Honor. The New York case was a trial court case, and the trial court didn't say that there was a different standard to be applied. It just said in an insurance company, insurance company standard, it would be applied in a certain way. I must say, it is such a pleasure, as a judge, to have two really good lawyers argue a case. However we come out, I compliment you both. It's really great to have such well-prepared lawyers. Thank you, Your Honor. Mistaking for all of us. Yes. What I'd like to say and what I'll argue about is for the use of charts. Yes. John Frank would use. I like diagrams. Or iPads or whatever. Well, that's for a lost generation. Your Honor, thank you for indulging me to just make four very brief points. And with your request for visuals, perhaps I can indulge by referring to some parts of the record. I'd like to begin with the point that we clearly preserved below, the point that Fireman's Fund, as well as NIMI, had a duty to notify us. And I'd refer, Your Honors, in particular to the motion for summary judgment. It's in the further excerpts of record, the section beginning in our motion for summary judgment brief at page 43 of the further excerpts of record in which we cite to Hartford the key Oregon case I cited to Judge Smith earlier. And on page 46, there's an express reservation of the point that we say that Fireman's Fund waited seven months to five years before its receipt of notice and giving the same notice to the defendants. The fact that the judge cut us out of that argument by saying, well, NIMI was reasonable, that's the very point. It was error not to reach the question of the unreasonableness of Fireman's Fund's delay in noticing us. And that's what we think was the decision below that you can reverse as a matter of law. Second, Ortiz is no bar to our appeal. Let me just be sure I understood this one point. Is your point the same whether we construe the issue as a matter of pure law or as a mixed question of law and fact? Yes, Your Honor. You have ‑‑ it's a question of pure law, so you have de novo review. You also have de novo review if it's a mixed question. And with respect, I disagree with my extraordinarily able adversary that it's a question of fact. And I think she rolled back to admitting that it was at least a mixed question of law and fact, which gives you de novo review. And we think unreasonableness of Fireman's Fund activity is proved as a matter of law in the existing record. Second, the reason why Ortiz is not a bar is, as Judge Wardlaw pointed out, we are just ‑‑ we were never allowed to try prejudice. And, again, I can use a visual, Judge Pragerson. I'm sorry I don't have it on a chart. But if you look in the original excerpts of record at pages 555 and 556, you'll see that there was an attempt to limit us. So Fireman's Fund said North Pacific's record for appeal, this is on page 556, was the record created by the summary judgment papers. And then back on page 549, the judge orders ‑‑ he effectively deprives us of the chance to try prejudice because he orders on 549 that granting the motion to limit the scope of proceedings consistent with the court's grant of summary judgment. So we're just not in the Ortiz world where the factual issue at summary judgment was later tried at the trial. It just never got tried. I think it would have helped, Your Honor. But third point, Your Honor, we do think that prejudice is proved on the existing record as a matter of law. If I could just cite to you that you heard from my adversary that Alice Codd says that the records were tossed. NIMI tossed all its records when NIMI moved out. And the record at further excerpts of record, page 51, makes clear that that was in May 2000. That falls in between when Fireman's Fund got notice from NIMI and when they bothered to tell NIMI about the Northern Pacific application which led NIMI to contact us. So we think this is the rare case in which the very heart of the case is we were held liable for policies that were never even in evidence and for which the circumstantial evidence was in the district court's own words very thin. Or thin, he said thin. And we don't think ‑‑ the reason it was so hard fought over this long period, as my adversary correctly suggests, is we didn't think we had any liability. We didn't think anybody proved that we owed anything. We weren't proved to be on the risk. And the chance to get the records that might have helped us resolve that question was the very thing destroyed during the late notice. So we think prejudice was ‑‑ What's the record cite again for the figure 2000 destruction? Further excerpts of record 51. Thank you. And finally, Your Honor, my very able adversary didn't spend much time on attorneys' fees. We think with respect you must affirm on the attorneys' fees question The district court correctly rejected attorneys' fees under the authoritative ruling of the Oregon intermediate court in the certain underwriters case. It's well established in this circuit that you must defer to the intermediate appellate court unless there's convincing evidence that the Supreme Court of Oregon would rule to the contrary. There are no similar other Oregon cases to the contrary of certain underwriters. Your Honor, I discussed how the other cases are about subrogies, and therefore we think the attorneys' fees were correctly denied as not provided for under the statute under certain underwriters. Thank you very much, Your Honor. Thank you very much. And we'll take a 10‑minute recess.
judges: Pregerson, Wardlaw, M Smith, Cjj